**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JANE ADAMS dba SWEET OLIVE DESIGNS,**<br>**Plaintiff**<br><br>**v.**<br><br>**HOME ESSENTIALS & BEYOND, INC.**<br>**Defendant** | **CIVIL ACTION**<br>**2017-1859**<br><br>**SECTION** |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff, Jane Adams, who respectfully files this Complaint against defendant, Home Essentials & Beyond, Inc. ("Home Essentials"), alleging the following facts upon information and belief:

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the copyright infringement claims within this Complaint pursuant to 28 U.S.C. §§ 1331, 1332 and 1338. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.

From approximately June of 2008 through December of 2014, Jane Adams licensed certain designs to Home Essentials. Home Essentials was provided notice that Adams owned the copyright to these designs. Home Essentials has continued to reproduce, market, and sell products utilizing the proprietary and protected designs of Adams well after its license had expired.

3.

The amount in dispute exceeds $75,000. Statutory damages alone may amount to $150,000 for each design infringed.

4.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1400. Defendant can be found nationwide. Defendant operates a website www.homeessentials.com which services the greater New Orleans market. Additionally, Home Essentials sells certain products to stores such as Steinmart and Kirkland's, both of which have retail outlets in the Greater New Orleans metropolitan area. Finally, venue is appropriate in the Eastern District of Louisiana because the very subject matter of this litigation concerns designs created and licensed in Bush, Louisiana.

## PARTIES

5.

Plaintiff, Jane Adams, is an individual domiciled and residing in Bush, Louisiana.

6.

Home Essentials & Beyond, Inc. is a corporation organized in New York. Upon information and belief, Home Essentials has its headquarters in New Jersey. Home Essentials is not licensed to do business in Louisiana.

## FACTUAL SUMMARY

7.

Jane Adams is an independent designer of various ceramics, fabrics, and household goods. She does business as Sweet Olive Designs.

8.

Home Essentials is a wholesaler of household goods.

9.

In or around June of 2008, Adams entered into a written license agreement with Home Essentials. The license agreement was periodically renewed through December 31, 2014.

10.

To be sure, the contract had been terminated for a period in 2012 by Adams due to the consistently late payment of royalties owed her by Home Essentials.

11.

A new agreement was entered in October of 2012 on the condition that Adams would receive a non-refundable, earned-upon-receipt, minimum advance of $3,000 per month.

12.

Paragraph 5(a) of the signed agreement stated:

> Home Essentials and Beyond agrees to pay the Artist/Licensor a royalty of 3% of total annual Net sales ( Net sales is defined as sales direct to customers less prepaid freight and returns) for all Licensed Products incorporating and embodying the Designs. The royalty shall be paid quarterly, but a minimum, non-refundable, monthly payment of $3000 due the first day of each calendar month shall be made to Artist/Licensor. If and when sales for a quarter exceed $300,000, then the additional royalty (over and above the minimum monthly payment) shall be due less the credit balance, if any, being carried forward from previous quarters. No costs incurred in the manufacture or sale, including any and all product that is sold below cost, shall be deducted from any royalties due to Licensor.

13.

The initial agreement, and each subsequent one, indicated that Adams always had been and was to remain the owner of all copyrights in the designs licensed.

14.

The initial agreement, and each subsequent one, indicated that the term of each agreement was one year and could not be extended except in writing. The final written agreement had an expiration date of December 31, 2014.

15.

Home Essentials has had no written contractual right to sell items utilizing the proprietary designs of Adams after December of 2014.

16.

The parties did not execute a new written agreement in December of 2014 for a combination of reasons, particularly (1) Adams had realized that a significant number of items were not appearing on the sales reports, and that correcting this error and getting corrected sales numbers would be important in determining the terms moving forward; (2) Adams was dealing with family health matters; and (3) Joseph Agnes was dealing with personal health matters.

17.

Home Essentials knew and admitted that sales reports were missing a substantial number of items, including at a minimum items that had been mislabeled as Home Essentials items rather than Sweet Olive Designs items. For example, Sue Horuzy of Home Essentials wrote on June 18, 2014:

> Hi Jane,
>
> I spoke with Joseph and your items have not been corrected to date. However, once they are, you will get a separate report for all sales on those items.

Later in the same email chain, Agnes admitted that the corrected numbers going years back on missing items "needs to be cleaned up."

18.

At the time of filing, corrected sales numbers had not been provided and the consequent unpaid royalties had never been “cleaned up.”

19.

Adams’ understanding and expectation in December of 2014 was that the parties would continue operating under the terms of the most recent written contract until the corrected sales reports were provided, and that the corrected sales reports would be provided quickly.

20.

Indeed, Agnes stated in mid-January of 2015 that he had the corrected numbers. These numbers were never provided to Adams, and Agnes stated in a telephone conversation that he realized that even the revised reports were still missing a significant number of items for which Adams was owed royalties.

21.

In February or March of 2015, Agnes had a phone call with Adams in which Agnes proposed terminating the payment of the $3,000 per month non-refundable payment. Agnes requested that the prior monthly payments carry forward to offset any future royalties, at least until the corrected sales reports are generated. Yet, Agnes recognized during this phone call that Home Essentials probably owed Adams royalties in addition to the $3,000 per month previously paid because of all of the items that had been left off of sales reports.

22.

Adams clearly and unequivocally rejected Agnes’ proposed change in terms to include an offset of future royalties. She responded that she did intend for sales to justify a royalty payment of at least $3,000 per month, but that the prior payments were nonrefundable and earned upon

receipt. She stated that the prior royalty payments—which were probably underpayments because of incomplete sales reports—in no event could be used to offset future royalties owed.

23.

Following this February or March of 2015 phone call, the only agreement between Adams and Home Essentials was that Home Essentials would expeditiously provide corrected sales reports so that the parties could determine how to move forward.

24.

Over the following months, Home Essentials repeatedly assured Adams that corrected sales reports would be forthcoming, though the corrected reports never came. Even though Agnes had acknowledged an underpayment of royalties to Adams as early as August of 2013, Home Essentials still had not even attempted to correct the incomplete and inaccurate sales reports nor pay Adams the remaining royalties owed to her.

25.

Adams relied to her detriment on the false representations of Agnes regarding the forthcoming nature of corrected sales reports—reports which were important in determining the terms of the parties' agreement from March of 2015 forward.

26.

Adams has not been paid any royalties from Home Essentials since March of 2015.

27.

Adams has never consented to the discontinuance of the payment of royalties, nor to Home Essentials' continued use of her designs without the payment of royalties.

28.

The last executed contract between Home Essentials and Adams provides that "All grants to any License to use designs under this Agreement are conditioned upon receipt of all full payments of all royalties due."

29.

Home Essentials has had no plausible right or license to sell items utilizing the proprietary designs of Adams after they discontinued paying her royalties in March of 2015, as any purportedly implied consent—which is explicitly denied—to do so was obtained upon the false promise that corrected sales reports would be forthcoming so that the terms of an ongoing relationship could then be determined.

30.

By February of 2016, Adams had put in writing to Joseph Agnes that Home Essentials did not have any right or license to continue ordering the manufacture of items using her designs. She indicated in this email that the corrected sales reports were long overdue.

31.

Neither Joseph Agnes nor anyone authorized to act on behalf of Home Essentials reasonably believed that Home Essentials had any right or permission to continue selling items using Adams' designs after February of 2016.

32.

On April 4, 2016, Adams sent via email and certified mail a termination letter to various Home Essentials executives. The letter indicated that Adams would not be renewing her license agreement with Home Essentials ever. It provided that Home Essentials was not authorized to place any additional orders for items utilizing Adams' designs after April 4, 2016. The letter

provided that Home Essentials had six months to deplete any inventory it had on hand as of April 4, 2016, and that no sales from Home Essentials were authorized under any condition after September 31, 2016.

33.

Following September 31, 2016, Home Essentials has not had any semblance of a colorable claim to a legal right to sell items using Adams' designs. Yet Home Essentials has continued to sell items using Adams' designs with full knowledge and notice that they had no right.

34.

At the time of filing, Home Essentials continues to fill orders from retailers for items utilizing designs owned and copyrighted by Adams. Certain of these items are marketed and sold online via www.homeessentials.com and certain items are marketed and sold via other means.

35.

This Complaint seeks relief for (1) the extensive and deliberate copyright violations of Home Essentials, (2) the extensive and deliberate breaches of contract which occurred throughout the contractual relationship, and (3) the fraudulent practices of Home Essentials in both (a) "passing off" designs of Adams as their own and (b) taking steps to deceive Adams by covering up the accounting malfeasance that systemically underpaid Adams the royalties due.

## THE DESIGNS

36.

Adams provided Home Essentials with access to approximately one-hundred sixty-two different designs from 2008 through 2014. Initially, this access was provided via email from Jane Adams to Joseph Agnes. At a later point, access was provided via both email to Agnes and via a

Dropbox account through which Deborah McSurley of Home Essentials was granted access. The designs for certain bath items were provided to Michael Felder.

37.

Upon information and belief, at least twenty-one (21) of these designs were incorporated into various products marketed and sold by Home Essentials. These designs include Fancy Scroll, Rooster, Chloe, Ellie, Jivana, Peace, Belinda, Gabriella, Jade, Zebra, Celebrate, Lhea Global, Riomar, Sonya, Bountiful, Les Jardins, Amanu, Graphic Geo, Zoe and Coordinates, Isle of Capri, and IKAT.

38.

Since the sales reports provided to Adams have been so unreliable and inaccurate, it is believed that other designs of Adams have been, are currently, or are expected to be incorporated into a product, marketed, and sold by Home Essentials. The full list of designs owned by Adams that was provided at some point to Home Essentials by Adams is included as Exhibit A.

39.

Some of these designs have been used in many different colors and in many different products. For example, the Fancy Scroll collection encompasses approximately one-hundred forty separate items such as plates, cups, pitchers, and serving platters.

40.

Other items may have only been incorporated into one or two products, and, presumably, some other designs never made it to market.

**JANE ADAMS OWNS AND HAS REGISTERED THE COPYRIGHTS**

41.

Adams is the owner of the copyright to each design listed in Exhibit A.

42.

Each license agreement entered into between Adams and Home Essentials included a provision that the artist, in this case Adams, “is the sole and exclusive owner of the Artwork, and shall retain all copyrights in and to the image.”

43.

On August 19, 2012, Adams registered the Fancy Scroll Collection and Rooster Collection with the United States Copyright Office.

44.

On October 14, 2013, Adams registered various collections with the United States Copyright Office, including Bountiful.

45.

On December 4, 2014, Adams registered various collections with the United States Copyright Office, including Amanu, Isle of Capri, Graphic Geo, Jade, Zoe and Coordinates, and Gabriella.

46.

On February 22, 2017, all remaining designs that had not been previously registered were registered with the United States Copyright Office.

47.

Each of the designs listed in Exhibit A have been registered with the United States Copyright Office.

48.

Exhibit B contains pictures of some of the designs which have been infringed by Home Essentials. Yet, discovery may reveal that additional designs have been infringed by Home Essentials.

**THE CONTINUING INFRINGEMENT IS**
**INTENTIONAL, EGREGIOUS, AND BRAZEN**

49.

Adams has repeatedly notified Home Essentials orally and in writing that all licenses to use her designs in new orders terminated, at the latest, by April 4 of 2016, and that any remaining inventory of Home Essentials had to be sold or destroyed by September 31, 2016. To be sure, Adams asserts here that Home Essentials' legal right to place new orders on items using her designs terminated no later than March 31, 2015.

50.

On December 1, 2016, Adams wrote to Joseph Agnes, copying co-owner Izidore Godinger, and stated:

> Hi Joseph-
>
> Attached are the images you sent me to work on for Bloomingdales from designs I sent Home Essentials in 2013. Attached are the same designs on Bloomingdales site.
>
> You never told me these went forward, and these designs have also been left off of sales reports. The corrected sales reports have yet to be sent and are still due.
>
> I told you I was willing to work something out with Fancy Scroll, Rooster and Arabella but you never got back to me to do so.
>
> You have no rights to sell any of my designs at all, not to anyone including Bloomingdales. We have no agreement. Arabella and the designs for Bloomingdales as well as many others have in fact been given over to someone else. This is a big problem.

I need you to call me and resolve this right away. Not looking for a fight, looking for resolution now.

Thanks,
Jane

51.

Agnes replied on December 6, 2016 assuring Adams that he saw the email and would respond with details the following Monday. This December 6, 2016 email is the last attempt of anyone associated with Home Essentials to contact Adams.

52.

Home Essentials continues to sell items utilizing designs owned by Adams at the time of filing from their own website. The infringement is open and brazen.

53.

Home Essentials has admitted that certain significant items utilizing Adams' designs have never appeared on sales reports and that she has consequently not been paid royalties for the sale of these items. The problem dates back to at least 2012.

54.

In August of 2013, Adams alerted Agnes that significant items for which she was owed royalties were not appearing on sales reports, and thus she was not being paid royalties for these items. Adams has consistently indicated that the contract requires that corrected sales reports be provided. At the time of filing, Adams has not received corrected sales reports dating to 2012.

55.

On September 21, 2016, Adams wrote to Agnes and Godinger the following via email:

Hi Joseph and Izidore-

There are a number of issues.

I responded to you both when Joseph reached out about continuing to work together. I told you I was willing to work something out provided we SETTLED THE INVENTORY AND YOU PROVIDED ME WITH CORRECTED SALES NUMBERS, INCLUDING ALL OF MY DESIGNS SOLD UNDER THE NAME HOME ESSENTIALS RATHER THAN SWEET OLIVE, which is due irregardless of whether or not we go forward. Still waiting.

You want to show Fancy Scroll, Arabella and Rooster, and God knows what else, at Tabletop. Again, I agreed as long as we got things settled. Still waiting.

At this point your sell-off period of ANY AND ALL OF MY DESIGNS ON ANY PRODUCT is over. Your rights to ORDER ANY PRODUCT WITH MY DESIGNS WAS OVER IN APRIL. STOP.

At this point there is NO AGREEMENT, NO SETTLING OF ANYTHING, AND UNTIL THERE IS, THE ANSWER IS NO.

Unless we work things out, DO NOT SHOW ANY OF MY DESIGNS ON ANY PRODUCTS AT THE TABLETOP SHOW AND DISCONTINUE SHOWING ANYTHING TO KIRKLANDS, TUESDAY MORNING, AND ANY AND ALL RETAILERS. This means getting all of my designs off your website and Classic Hostess as well.

You know where I stand. It's up to you.

Thanks,
Jane

(emphasis in original)

56.

Home Essentials appears as a purchaser of items using Adams' designs on a sales report merely nine days after this email asking them to "STOP."

57.

Adams' communications to Home Essentials regarding their legal right to continue using her designs were clear, continuous, and consistent.

58.

For example, Adams wrote on February 5, 2016 to Joseph Agnes:

Hi Joseph-

I don't know why it is so hard to get this done. Don't know what the reasoning is. Don't know why you would say you want to get things going in a big way, yet cannot seem to line things up to do so after a very, very long time. Here we are again, 4 weeks later.

This cannot go on indefinitely. I don't want you to order anything else of mine in any category until we talk and settle things.

When can you talk?

Thanks,
Jane

59.

Joseph Agnes had continually assured Adams that the inaccurate sales reports would be fixed and that a new contract would be negotiated at the beginning of 2015. In fact, the purported suspension of payment of royalties in March of 2015 made the need to renegotiate the terms of the license even more urgent.

60.

Accordingly, Adams believed Agnes that the corrected sales reports would be forthcoming, particularly in light of a February 27, 2015 email from Agnes indicating "Yes, I have numbers – 2013-2014-2015 to date and missing items we have been discussing that I want to go through with you before we finalize and get out to you."

61.

For the next two years, Adams was lied to about the imminent corrected sales reports and associated overdue royalties. Corrected sales reports have never been provided and she has never been paid royalties for the missing items.

62.

In July of 2016, Adams wrote to Izidore Godinger and copied Joseph Agnes:

> Dear Izidore,
>
> Hope all is well with you.
>
> I spoke with Joseph last week regarding Kirkland's interest in continuing to sell Fancy Scroll. While I have passed the design on to an agent, it is not to be shown until September when your sell-off period is complete as is only right. As part of our termination process, I am to receive the final CORRECTED SALES NUMBERS of all Sweet Olive Designs on all products, particularly the ones that I was never informed of, and including the images I sent you with the Home Essentials tags on the Sweet Olive items. To date I have not received those reports.
>
> Kirkland's is time sensitive. It makes sense to me to continue to sell it to them depending on their commitment, but we need to rectify the final and correct sales numbers first. Then we need to work out the details.
>
> [….]
>
> Please advise.
>
> Best,
> Jane

63.

At the time of filing, a substantial number of products utilizing various proprietary designs of Adams remain on both the Home Essentials website and the Classic Hostess website. Over the vehement objection of Adams, Home Essentials has continued to sell products utilizing her designs without a license, without paying royalties, and in violation of copyright law.

64.

Home Essentials' attitude towards Adams and her copyright ownership can be demonstrated via the following 2013 email from Joseph Agnes, copying Izidore Godinger, the President and a co-owner of the entity:

> I HATE THAT YOU RE-FORWARDED THIS EMAIL AND HAD TO COPY IZIDORE.
>
> I AM DONE WITH THIS…
>
> STOP EMAILING AND CALLING ME!!
>
> WHEN [AND] IF I HAVE TIME IN THE COMING WEEKS…I WILL GET TO YOU.
>
> IF NOT GOOD ENOUGH FOR YOU…HAVE YOUR ATTORNEY SEND A LETTER…I KNOW THAT'S THE NEXT THREAT COMING…
>
> NO NEED TO RESPOND TO THIS…I HAVE BLOCKED ALL YOUR EMAILS…
>
> (emphasis in original).

65.

Upon information and belief, all key personnel at Home Essentials have been notified that they do not have permission nor license to continue selling items in violation of Adams' rights in the designs. Yet, Home Essentials continues to violate Adams' exclusive rights to the designs by selling items utilizing these designs.

66.

Home Essentials owns and manages the Apropos brand.

67.

Items utilizing Adams' proprietary designs appear in the Spring 2017 Apropos catalogue.

68.

Home Essentials has not demonstrated any indicia of intent to stop selling items using Adams' proprietary designs.

69.

Adams discovered that shortly after Home Essentials met with Bloomingdales to market certain items utilizing designs of Adams, some of these designs had been modified slightly. Since the contract explicitly prohibited any derivatives of her designs, Adams inquired about the changes.

70.

When notified of this issue, Joseph Agnes replied:

JANE,

THIS WAS SENT IN WORD.

WE CAN PRINT AND MAIL TO YOU.

CHECKED WITH DEB, HILDA, DEB, SABRINA, SUSAN, IZIDORE, MIKE, MICHAEL, JC, MARIA, CHRIS, GOLDY, SAM, PAUL, NANCY, VICTORIA, CATHY, SUSAN B, STACEY, SUE, ANNETTE, WENDY, ETC., ETC. NO ONE KNOWS WHERE THESE CAME FROM.

I AM DONE TRYING TO FIGURE IT OUT.

LAST TIME I WILL RESPOND TO THIS. I TOLD YOU IT WILL NOT HAPPEN AGAIN…NO ONE HAS ACCESS ANY LONGER TO ANY OF YOUR ART.

NEED TO MOVE FORWARD.

[….]

THANKS
JOSEPH

(emphasis in original)

71.

Thus, Home Essentials allowed designs of Adams to be shown to Bloomingdales in a modified state without Adams' permission. When confronted about the issue, Home Essentials attacked Adams for pointing out their error.

72.

In December of 2016, Adams noticed through her personal shopping experience that Bloomingdales actually went forward with theses designs. Home Essentials never notified Adams that the designs were going to market; they never provided Adams the contractually required sampling information on the products; and Home Essentials never paid Adams royalties on these sales, as the sales never even showed up on sales reports.

73.

Additionally, these Bloomingdales items are labeled and marketed under the brand "Sparrow and Wren" rather than the contractually-obligated "Sweet Olive Designs."

74.

Upon information and belief, Home Essentials has continued to profit from the sale of these Bloomingdales items.

75.

Adams' proprietary rights to her designs, her contractual rights with respect to Home Essentials, and her requests for Home Essentials' recognition of these collective rights have all been consistently treated as immaterial to Home Essentials.

76.

Home Essentials' deliberate, egregious, and brazen misuse of Adams' designs has caused damage to Adams' ability to re-license her designs.

77.

For example, a potential licensee wrote to Adams in December of 2016:

> Just need to be absolutely clear about status of this design with Home Essentials since you mentioned that they did sample. Also Fancy Scroll
>
> Do u know status? Are they still offering to Kirklands and others ?
>
> Was there an agreement in place?
>
> Are u completely clear legally of them since April 2016? Thanks
> I have to be sure to advise my management accurate info.
> Thanks

**THE SALES REPORTS WERE NOTORIOUSLY INACCURATE AND MISMANAGED <u>AT THE HIGHEST LEVELS OF THE ORGANIZATION</u>**

78.

Information that would have alerted Adams to the underpayment of her royalties, mislabeling of goods utilizing her designs, and other malfeasance of Home Essentials was deliberately and consistently withheld from Adams.

79.

In June of 2013, Adams wrote to Joseph Agnes about the change in format and information provided in the sales reports:

> Joseph-
>
> Here is the open order report that Sue sent me. You can see it doesn't give me much info.
> Sue explained she had set up the format Linda Elkins used which gave me customer name, quantity, price, inventory, etc……there must be a way to get this info. I

> don't want to create hassle for anyone, but there must be a way to get this info. Can we work on this?
>
> Thanks,
> Jane

80.

Agnes responded:

> Jane,
>
> WILL WORK ON THIS AND KEEP YOU UPDATED.
>
> WE ARE ON A NEW SYSTEM AND CANDIDLY, BECAUSE THEY ARE A PRIVATE COMPANY, THEY DO NOT WANT US SEEING FINAL NUMBER S EITHER…SO IT IS A COMPANY ISSUE.
>
> [….]

81.

Joseph Agnes was Chief Operating Officer of Home Essentials at the time of writing this "Company Issue" email.

82.

Upon information and belief, only the owners of the company had access to "final numbers."

83.

A few months prior to the "Company Issue" email, Susan Horuzy, who had previously produced and sent the sales reports to Adams, wrote:

> Jane,
>
> I had been instructed by [CFO] Ruben to halt sending you reports as he would take care of it going forward. I know you are probably upset by this as I am not sure if he will even send anything. [….]

84.

Throughout the contractual relationship between the parties, Home Essentials consistently left off of the sales reports items utilizing designs of Adams and consequently failed to pay her the royalties due.

85.

For example, Adams sent pictures of items she physically came across in Steinmart that utilized her designs but were not showing up on sales reports. An August 1, 2013 email from Adams to Godinger and Agnes provides, in part:

> Joseph, where are the adjusted sales reports you tell me are printed and on your desk in email below? The sales for [Sweet Olive Designs] patterns are not showing up on SOD reports, but on [Home Essentials] reports. This is a gross error that needs to be corrected ASAP so that all SOD sales are accounted for properly.

86.

Similarly, certain items sold by Bloomingdales utilizing designs of Adams do not show up on sales reports.

87.

Similarly, items sold directly by Home Essentials utilizing the designs of Adams do not show up on sales reports. In fact, items which are on sale and available on the Home Essentials website at the time of this filing have not appeared on the sales reports from at least 2013 through 2016. Some of these items are garden pots utilizing designs “Zoe and Coordinates,” “Amanu,” “Les Jardins,” and “Graphic Geo” and identified as a package deal by the Home Essentials item number 79727.

88.

Upon information and belief, there are many other items and designs which were produced, marketed, and sold by Home Essentials and which never showed up on sales reports.

89.

Information pertaining to many of these items that did not show up on sales reports was deliberately withheld from Adams for the purpose of fraudulently concealing the malfeasance of Home Essentials.

90.

For example, it was only through Adams' personal shopping experiences that she discovered many of the items which went to market that never showed up on sales reports. She discovered about other missing items from photographs of the Home Essentials showrooms.

91.

Critically, Adams incorporated various provisions in her contracts with Home Essentials to prevent the situation of a product going to market without her knowledge. For example, Adams negotiated "the right to approve, in advance, the quality of the Licensed Products (including, without limitation, prototypes, camera images prior to production, revised production and production samples)." It was important for Home Essentials to abide by these provisions so that the schedule of licensed designs would remain up to date and accurate because, among other reasons, Adams had a right to seek a different licensee if Home Essentials decided not to go forward with a design.

92.

It was only through Adams' personal investigation that she learned items utilizing the IKAT and Amanu designs went to market. Adams was not provided information about these

products that Home Essentials was contractually obligated to provide – information that would have alerted her that these designs went to market and that she should be expecting royalties from these items.

93.

Upon information and belief, items utilizing Adams' designs which do not show up on reports correlate strongly to the items for which no samples or pictures were provided to Adams. For example, Adams was not provided sampling information for items using the IKAT and Amanu designs, and items using these designs were omitted from sales reports, yet items using these designs are available on the market.

**HOME ESSENTIALS REGULARLY MISLABLED DESIGNS BELONGING TO ADAMS AND PRESENTED THEM AS THEIR OWN**

94.

Home Essentials was contractually obligated to market and back-stamp all products utilizing Adams' designs under the name Sweet Olive Designs.

95.

Home Essentials regularly and repeatedly mislabeled products utilizing Adams' designs under the Home Essentials brand in exclusion to the Sweet Olive Designs brand. The mislabeling continues at the time of filing.

96.

For example, an insulated lunch tote utilizing Adams' Jivana design, item number 22252, was tagged only with a Home Essentials label. The label said "By Home Essentials and Beyond" and provided a trademark notice pertaining to the Lunch Break element of the tag. No notice of

any of Adams' proprietary rights was provided, and no credit for the design was provided to Adams via the Sweet Olive Designs label.

97.

Additionally, certain garden pots utilizing the designs of Adams are currently being marketed under the "Apropos Garden" label. Apropos is a brand owned and managed by Home Essentials. Additionally, certain items using Adams' designs that appear in Bloomingdales are marketed under the "Sparrow and Wren" label.

98.

Upon information and belief, additional items utilizing the designs of Adams have been mislabeled.

99.

As described above, this mislabeling typically had the effect of omitting the mislabeled products from the sales reports provided to Adams, and, consequently, deprived Adams of her royalty interests.

100.

Separately, the mislabeling had a detrimental effect on the Sweet Olive Designs brand.

101.

For example, the mislabeling has caused other potential licensees of Adams' designs to question her ownership and control of the designs.

102.

Upon information and belief, the mislabeling has caused Adams to lose potential contracts as a result of the doubt as to her ownership and control of the designs.

103.

For example, a potential licensee wrote to Adams in December of 2016 "Also some concern about conflict with Home Essentials even though legally you have ended relationship, don't want things to get messy."

104.

Home Essentials has admitted that many of the products using Adams' designs were mislabeled, yet Home Essentials has only sporadically corrected these mislabeling issues and has continued to make the same errors.

**HOME ESSENTIALS BREACHED ITS CONTRACTUAL OBLIGATIONS TO ADAMS IN A SUBSTANTIAL MANNER AND WITH DISTURBING FREQUENCY**

105.

Adams complied with all terms of all of her contracts with Home Essentials.

106.

Home Essentials' most basic contractual obligation to Adams was to pay royalties on all of the items utilizing the licensed designs.

107.

Beginning in October of 2012, Adams was to receive a $3,000 monthly payment on the first of every month. Additionally, Adams was to receive 3% of all sales exceeding $300,000 in a given quarter.

108.

Prior to October of 2012, Home Essentials typically owed a 5% royalty interest on all sales utilizing the licensed designs.

109.

For at least the six years preceding this filing, Home Essentials failed to pay Adams the royalties due her.

110.

When royalties were paid to Adams, they were typically late and incomplete.

111.

Home Essentials was contractually obligated to provide Adams with a monthly sales report of open to ship orders as well as a monthly sales report. These reports were due within ten days of the first of each calendar month.

112.

The sales reports, when provided, were typically late and incomplete.

113.

Home Essentials was obligated to provide certain sampling information to Adams for the purposes of quality control and to alert Adams that a product was moving forward to market.

114.

Home Essentials frequently failed to provide the required sampling information.

115.

Home Essentials was obligated to cease requesting the manufacture of items using Adams' designs following the termination of any agreement.

116.

Home Essentials has continued to request items using Adams' designs from the manufacturer following the termination of all licensing agreements.

117.

Home Essentials was obligated to finish the completion and disposition process of all remaining inventory following termination of the agreement within six months of termination.

118.

Home Essentials ordered new product after receiving notice of the six-month disposition period and continues to sell the product well after the termination of the six-month disposition process.

**CAUSES OF ACTION**

**COPYRIGHT INFRINGEMENT**

119.

Each of the designs identified in Exhibit A are original to Jane Adams.

120.

Each of the designs identified in Exhibit A have been registered with the United States Copyright Office.

121.

The designs identified in Exhibit A each fall within the proper subject matter of copyright consistent with 17 U.S.C. § 102(a)(5).

122.

Each of the copyrights of designs identified in Exhibit A are valid.

123.

Jane Adams has the exclusive right to reproduce the designs in Exhibit A. Home Essentials does not possess this right and has not possessed this right since March 31, 2015.

124.

Home Essentials has unlawfully and without permission copied, marketed, and sold items utilizing some or all of the designs of Jane Adams listed in Exhibit A.

125.

Upon information and belief, Home Essentials has unlawfully and without permission copied, marketed, and sold items utilizing at least the following designs of Jane Adams: Fancy Scroll, Rooster, Chloe, Ellie, Jivana, Peace, Belinda, Gabriella, Jade, Bountiful, Les Jardins, Amanu, Graphic Geo, Zoe and Coordinates, IKAT, Isle of Capri, and Zebra.

126.

The copyright violations of Home Essentials against Adams have been intentional, egregious, and brazen.

**<u>BREACH OF CONTRACT</u>**

127.

From June of 2008 through December of 2014, Home Essentials and Jane Adams had entered and were bound by various written contracts granting Home Essentials a license and certain marketing rights and requiring certain obligations from Home Essentials in return.

128.

Adams complied with each of her obligations throughout the terms of the various contracts.

129.

As described above, Home Essentials repeatedly and frequently breached its contractual obligations to Adams.

130.

Most fundamentally, Home Essentials failed to pay the royalties owed to her, as they

regularly left various items off of the sales reports. Accordingly, Adams has never been paid for these missing items.

131.

Additionally, Home Essentials failed to provide to Adams the sampling information that it was required to provide for each item that went to market. As a result, Adams was often unable to identify Home Essentials' malfeasance in failing to pay royalties.

132.

Additionally, Home Essentials withheld information from Adams that would have allowed her to associate item numbers with particular products.

133.

Additionally, Home Essentials was required to wind down and dispose of all remaining inventory utilizing Adams' designs within six months of the termination of the contract. Home Essentials' failure to do so has caused severe harm to Adams' ability to engage new licensee partners.

**UNFAIR COMPETITION VIA "PASSING OFF"**

134.

The parties' latest contract, signed in 2013, provided that disputes between the parties would be governed by New Jersey state law.

135.

New Jersey state law has generally subsumed the common law tort of "passing off" under the more flexible business tort of unfair competition.

136.

Home Essentials regularly, repeatedly, and intentionally mislabeled products utilizing the

designs of Adams as "Home Essentials" rather than "Sweet Olive Designs."

137.

Home Essentials was obligated via contract and otherwise to identify each product utilizing a design of Adams with a Sweet Olive Design label in order to identify the source of the design.

138.

The rampant mislabeling of Home Essentials has caused substantial customer confusion regarding the source of certain designs created by Adams.

139.

Adams often received emails from customers who noticed the Sweet Olive Designs labels. These communications built brand loyalty and control.

140.

Without the Sweet Olive Designs labels, customers would not be able to contact or research Adams and the opportunity to build brand loyalty was lost. Moreover, the ability to control the interactions between the customer and the brand was lost, as Adams had no control over the employees of Home Essentials who may have received similar communications.

141.

Additionally, the value to a brand provided by a quality design was inappropriately provided to Home Essentials to the exclusion of Sweet Olive Designs when the products at issue were mislabeled.

142.

Adams suffered damages resulting from Home Essentials' mislabeling and passing off of her designs, and this conduct of Home Essentials was accompanied by a wanton and willful disregard of Adams, whose damages were foreseeable.

**FRAUD**

143.

Home Essentials engaged in a fraudulent scheme to withhold information from Adams that would have alerted her to the malfeasance of Home Essentials, particularly in the systemic underpayment of royalties, mislabeling of goods, breaches of contract, and copyright violations.

144.

Home Essentials was contractually obligated to notify Adams of all products utilizing the designs of Adams that went to market.

145.

Home Essentials was contractually obligated to notify Adams of complete and accurate sales of all items utilizing the designs of Adams.

146.

Adams relied upon the obligations of Home Essentials to provide the complete and accurate information identified in the above two paragraphs. This information was important to Adams for the following illustrative reasons: monitoring the payment of royalties; evaluating the value of the Home Essentials relationship vis a vis other licensing opportunities; monitoring the quality of products utilizing Adams' designs; monitoring sales figures to determine what was successfully selling and what was not so that adjustments in time, effort, and focus could be made; and monitoring which retailers carried which products for the purposes of more effectively interacting with customers.

147.

Home Essentials exercised complete control over the information that was obligated to be provided to Adams, even at the entity-ownership level.

148.

Home Essentials regularly, intentionally, and systemically withheld information from Adams that would have alerted her to the extensive malfeasance of Home Essentials.

149.

Adams suffered damages from the fraudulent scheme described in the form of, at a minimum, (1) a delayed contract termination, which resulted in lost opportunities to work with more responsible licensee partners; (2) damage to the Sweet Olive Designs brand through an inability to monitor quality of products on the market; and (3) damage to the Sweet Olive Designs brand through an inability to monitor market trends pertaining to Adams' designs. Additionally, this fraudulent scheme inhibited the ability of Adams to discover and assert the foregoing legal claims.

150.

The damages identified above were caused by the wanton and willful disregard of Adams, whose damages resulting from this fraudulent scheme were foreseeable.

## **ADAMS IS ENTITLED TO RELIEF**

151.

Jane Adams requests and is entitled to preliminary and permanent injunctions against Home Essentials prohibiting the further infringement of Adams' copyrights in the items listed in Exhibit A.

152.

Adams requests and is entitled to damages pursuant to 17 U.S.C. § 504. Adams reserves the right to choose between statutory damages versus actual damages and profits after discovery has been completed, and particularly discovery into her actual damages and the gross revenues of

Home Essentials.

153.

Adams requests the recovery of full costs and attorney's fees as permitted by 17 U.S.C. § 505.

154.

Adams requests and is entitled to full contract damages, particularly those resulting from the underpayment and/or late payment of royalties, along with interest accruing from the contractual due date of such royalties.

155.

Adams specifically requests sampling information on all products that went to market.

156.

Moreover, Adams requests the identification and segregation of all remaining inventory of items utilizing Adams' designs.

157.

Adams requests and is entitled to damages to the Sweet Olive Designs brand resulting from Home Essentials' mislabeling and/or passing off of Adams' designs.

158.

Adams requests and is entitled to damages resulting from the fraudulent scheme to withhold information from her.

159.

Adams licenses her designs as a livelihood, so the torts and breaches of contract upon her caused nonpecuniary damages such as increased anxiety for her family and wellbeing, emotional distress over her ability to pay bills and make a living, and emotional distress over the performance

of her designs and professional success. Adams requests recovery for these nonpecuniary damages.

160.

Adams requests and is entitled to an award of punitive damages pursuant to N.J. Stat. § 2A:15-5.12.

Accordingly, plaintiff, Jane Adams d/b/a Sweet Olive Designs, respectfully requests that this Complaint be received, filed, and served upon defendant, Home Essentials & Beyond, Inc. Plaintiff further prays that judgment be found in her favor awarding the requested relief.

**HANGARTNER RYDBERG & TERRELL, LLC**

By: /s/ Mitchell Hasenkampf
Mitchell Hasenkampf, La. Bar No. 32870
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Lance R. Rydberg, La. Bar No. 02089
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile: (504) 522-5689
mhasenkampf@hanrylaw.com
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
lrydberg@hanrylaw.com

***Attorneys for Plaintiff,***
Jane Adams, dba Sweet Olive Designs